# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARRINGTON KEYS,

    Plaintiff

    v.

COMMONWEALTH OF PA, et al.,

    Defendants

CIVIL ACTION NO. 3: CV-10-2487

(Judge Nealon)

(Magistrate Judge Blewitt)

## REPORT AND RECOMMENDATION

### I. Background.

On December 6, 2010, Plaintiff, Carrington Keys, currently an inmate at the State Correctional Institution at Frackville, Pennsylvania (SCI-Frackville), filed, *pro se*, this civil rights action pursuant to 42 U.S.C. § 1983, §1981, §1985 & § 1986, as well RICO, 18 U.S.C. §§ 1961, *et seq.* Plaintiff asserts federal criminal law violations under 18 U.S.C. §241 and §242 and Pennsylvania state criminal violations under 18 Pa. C.S.A. §4951 and 4952 as his predicate acts with respect to his RICO claims. Plaintiff also raises state law claims and claims under the Pennsylvania Constitution, Article I.[1] Plaintiff simultaneously filed a Motion for Preliminary Induction with attached affidavits and a support brief. (Docs. 2 and 3). He also filed a Motion for Leave to Proceed *in forma pauperis* on December 30, 2010. (Doc. 7).

---

[1]Plaintiff Keys has filed several actions with this Court. *See Keys v. Beard*, 04-0823; *Keys v. Craig*, 04-1004; *Keys v. Kelchner*, 06-0260; *Keys v. Klem*, 06-0479; *Keys v. Pa. Dept. of Corrections*, 06-1329; *Keys v. Krieder, et al.*, 07-187; *Keys v. Beard*, 07-0337; *Keys v. Commonwealth of Pa. Dept. of Corrections*, 07-0338; *Keys v. Kreider*, 07-1478; *Keys v. Beard, et al.*, 07-1034; *Keys v. Carroll, et al.*, 10-1570; *Keys v. Commonwealth of Pa.*, 10-1740.

This Court has jurisdiction over Plaintiff's instant Complaint under 28 U.S.C. §1331 and §1343(a). Plaintiff requests the Court to exercise its supplemental jurisdiction over his state law claims under 28 U.S.C. §1367.

To the extent Plaintiff states in the caption of his Complaint that he is also filing this action on behalf of "all similar situated," seemingly the other black inmates who were confined in the RHU at SCI-Dallas during the relevant times of this case, we find that Keys is the only Plaintiff and that this is not a class action. Further, Plaintiff Keys can only represent himself in this action and he lacks standing to sue on behalf of any other inmate. *See Prison Soc. v. Cortes*, 2009 WL 1653543, * 4 (M.D. Pa.) ("the Plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties.") (citation omitted). Additionally, Plaintiff Keys cannot meet the injury requirement for standing with respect to any other inmates since his allegations only describe injuries to himself. *Goodson v. Maggi*, 2010 WL 1006901, *9 (W.D. Pa. 2-22-10). Also, Plaintiff Keys alone filed an *in forma pauperis* motion in this action and he alone signed his Complaint. (Doc. 1, p. 12).

Thus, we consider Keys as the sole Plaintiff in this action.

## II. Allegations of Complaint.

Plaintiff's Complaint consists of twelve handwritten pages. (Doc. 1). Plaintiff names the following sixteen Defendants in his Complaint: 1) Commonwealth of Pennsylvania; 2) Luzerne County Courthouse; 3) Luzerne County District Attorneys Office; 4) Pennsylvania State Police Wyoming Barracks; 5) Pennsylvania Department of Corrections SCI-Dallas; 6) Luzerne County Commissioner Jane Doe; 7) Jacqueline Musto Carroll, District Attorney ("DA") of Luzerne County;

2

8) David Pedri, Assistant District Attorney ("ADA") of Luzerne County; 9) Governor Ed Rendell; 10) Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"); 11) Christopher Wilson, Corporal, Pennsylvania State Police ("PSP") Wyoming Barracks; 12) District Justice ("DJ") James Tupper; 13) Jerome Walsh, Superintendent, SCI-Dallas; 14) Vincent Mooney, Deputy Superintendent of Facility Management, SCI-Dallas; 15) Joseph Zakkarauskas, Major of the Guards, SCI-Dallas; and 16) American Federation of State, County and Municipal Employees ("AFSCME") Local Chapter # 1328. (Doc. 1, pp. 1, 2-3).[2]

Plaintiff raises several constitutional claims in his Complaint. He asserts First Amendment retaliation claims. He raises malicious prosecution claims under the Fourth and Fourteenth Amendments. Plaintiff also raises Fourteenth Amendment due process and equal protection claims. Further, Plaintiff raises civil RICO claims as well as a conspiracy claim under §1985. Additionally, Plaintiff raises §1981 and §1986 claims.

Specifically, Plaintiff Keys alleges that on June 14, 2010, he filed a civil suit in Luzerne County Court of Common Pleas ("CCP"), Civil No. 7524-2010, against the Luzerne County District Attorney's Office, DA Carroll, PA DOC, Defendant Secretary Beard, Defendant Walsh, Defendant Mooney, Defendant Zakkarauskas and several SCI-Dallas officials for "turning a blind eye" to assaults on him and other black prisoners who participated in reporting and exposing abuses at SCI-Dallas. Plaintiff avers that after he filed his CCP case and it was reported in the Times Leader newspaper, "Luzerne County District Attorneys Office, SCI Dallas, Pennsylvania State Police and

---

[2]The 16 Defendants specified in the caption of the Complaint are not all listed in the Parties Section of the Complaint, *i.e.* only 10 Defendants are listed in the Parties Section.

local Magistrates office responded with retaliation by filing false fictitious and unfounded criminal charges [against him] for the sole purpose of vindictively punishing the Plaintiff and to silence the Plaintiff from further exposing the practices and patterns of constitutional violations at SCI Dallas and within the Luzerne County District Attorneys Office." (Doc. 1, p. 3).

Plaintiff avers that Defendants failed to prosecute fellow state, county and municipal employees and union members as well as white officers who "viciously" assaulted him and other black inmates confined in the RHU who reported abuses at SCI-Dallas. He claims that Defendants operated under a "code of silence" and a "conspiracy code" requiring them to never report, go against or prosecute fellow union members and fellow Commonwealth officials, and to turn a blind eye to crimes committed by guards at SCI-Dallas.

Thus, Plaintiff avers that criminal prosecution was initiated against him in the CCP as retaliation for his CCP civil suit and his reporting of abuses by prison guards against inmates at SCI-Dallas. He avers that Defendants refused to prosecute the prison staff for their abuses and instead prosecuted all inmates who complained about conditions at the prison. Plaintiff asserts that Defendants had financial and political motives for selectively prosecuting inmates who complained and not their fellow union members and state officials. (Id.).

Plaintiff alleges that by maliciously prosecuting him and other inmates who complained, Defendants are "acting as a corrupt organization by using tax payers money to procure secret profits" by initiating more prosecutions against inmates thereby increasing the finances for their agencies and the jobs for their fellow union members. Plaintiff states that Defendants, by "concealing their financial and political motives for always prosecuting prisoners and always refusing

4

to prosecute guards/union members for the same crimes" committed RICO predicate acts. (*Id.*, p. 4).

Plaintiff avers that on July 6, 2010, Defendant DA Carroll through "her underboss" Defendant ADA Pedri, and in concert with Defendant PSP Corporal Wilson and Defendant DJ Tupper, maliciously filed criminal charges against him due to his exercise of his First Amendment rights by filing his CCP action to remove the spotlight off of the DA's office and SCI-Dallas for ignoring abusive treatment to inmates in the RHU. Plaintiff avers that the stated Defendants "conspire[d] to bring false charges against [him]." Plaintiff avers that Defendant DJ Tupper, the issuing authority with respect to the criminal complaint filed against him, *i.e.* CR-0000249-10, was a "rubber stamper" for Defendants Carroll, Pedri and Wilson. (*Id.*, p. 4).[3]

Plaintiff further alleges as follows:

Defendant District Attorney Carroll, Pedri and Wilson, Zakkarauskas and Dallas Defendants have in their possession video recorded evidence of white officers viciously beating plaintiff and 5 other black inmates for the same incident in which their criminal complaint is founded upon (CR-249-10). Defendants purposely, willfully and intentionally are turning a blind eye to felony assaults committed by guards on video of 4-29-10 while selectively and maliciously moving forward with charges against Plaintiff and 5 other black inmates for same incident.

(*Id.*, p. 5, ¶ 6.).

Plaintiff states that he had his preliminary hearing on September 16, 2010, before Defendant DJ Tupper, and that Tupper, along with Defendants Wilson and Zakkarauskas, deprived him of his

---

[3]We have printed a copy of Plaintiff's CCP Criminal Docket Sheet in Case No. CP-40-CR-0003548-2010, which was found at http://ujsportal.pacourts.us. We attach a copy of Plaintiff's CCP Criminal Docket Sheet, a public record of the Pennsylvania state court of which we take judicial notice, to this R&R. Also, Plaintiff repeatedly refers to his CCP criminal case in his Complaint.

right to call witnesses.[4]  Plaintiff also avers that his preliminary hearing was closed to the public, and his witnesses were not allowed to be in the courtroom, and that no stenographer was present due to an alleged plot that he planned to escape, which Defendant Zakkarauskas fabricated and revealed to PSP.  Plaintiff avers that Defendants Tupper and Wilson  conspired to deprive him of his right to have a transcript at his preliminary hearing and that they coached witnesses.  Plaintiff avers that he very recently had a second preliminary hearing (seemingly a continuation of his first preliminary hearing) on November 12, 2010, and that Defendant DJ Tupper again denied him of his  right to call witnesses.  Plaintiff states that at his second preliminary hearing, Defendant Wilson conspired with Defendant Tupper to use tainted evidence against him, and that Tupper conspired with Wilson to presume Plaintiff, as well as the other inmates charged, was guilty until proven innocent.  Plaintiff avers that Defendant Tupper improperly bound over to court the charges against him without requiring the prosecutor to present evidence to support the elements of the riot charges which arose out of an incident at SCI-Dallas.  (*Id.*, p. 5).

In fact, Plaintiff's CCP Criminal Docket Sheet reveals that on November 12, 2010, the following 7 charges were bound over for court by Defendant Tupper:

| 1/ | Aggravated Harassment By Prisoner |
| 2/ | Aggravated Harassment By Prisoner |
| 3/ | Aggravated Harassment By Prisoner |
| 4/ | Aggravated Harassment By Prisoner |
| 5/ | Aggravated Harassment By Prisoner |
| 6/ | Aggravated Harassment By Prisoner |
| 7/ | Riot-Intent to Prev/Coerce Off'l Act |

---

[4]The Switzer Affidavit attached to Plaintiff's Doc. 2 Injunction Motion attests that Plaintiff was not allowed to call witnesses at his preliminary hearing.

(*See* Attached Criminal Docket Sheet).

Thus, Plaintiff alleges that his due process rights were violated at his preliminary hearings. Plaintiff states that he has filed motions with the CCP challenging his preliminary hearing. Plaintiff's Criminal Docket Sheet indicates he filed a Motion to Dismiss the charges bound over against him via a Writ of Habeas Corpus which has been scheduled for a hearing with the CCP on February 17, 2011. (*Id*.). Plaintiff challenges the sufficiency of the criminal complaint filed against him and the failure of the prosecution to sufficiently establish a *prima facie* case against him at his preliminary hearings. Plaintiff avers that his constitutional rights were violated during his preliminary hearings, including his Fourth Amendment and Sixth Amendment rights, and that the charges should have been dismissed. Plaintiff also claims that the refusal to dismiss the charges against him since no *prima facie* case was established, violated his rights under Article I of the Pennsylvania Constitution.

With respect to the supervisory Defendants Walsh, Mooney, Beard, and Rendell, Plaintiff avers that it was their policy or custom not to implement or follow a policy for reporting crimes committed by prison guards. (*Id.*, p. 7).

Plaintiff asserts as follows regarding his municipal liability claims against Luzerne County:

23.     Specifically it is or was the policy of Luzerne County, SCI Dallas, Walsh, Mooney, PA State Police, Wilson, Carroll and Pedri to overlook or turn a blind eye crimes of correctional or union members due to political and financial interest, collective bargaining agreements of AFSCME and job security in selectively and maliciously prosecuting blacks or other persons outside their union.

24.     It was or is the policy, practice, protocol of Commonwealth of Pennsylvania and specifically in Luzerne County District Attorneys Office and Pennsylvania state Police Office, Defendants Carroll, Wilson, Pedri to give immunity to correctional guards and as a result of this practice, pattern, protocol of giving corrections officers carte blanche to abuse, plunder and pillage prisoners Defendants Carroll, Pedri and Wilson believe they have the vested authority to

7

only enforce law when it is convenient to their fellow county, state and union members and silence any person who would dare expose their bad faith conduct.

(*Id.* at ¶'s 23.-24.).

Further, Plaintiff alleges:

28.    The actions of Defendants Tupper and Christopher Wilson in moving forward with criminal charges without bringing forth evidence of unlawful assembly evidenced a practice, policy or custom within Luzerne County of depriving the accused of due process right to be presumed innocent until proven guilty and while Tupper had knowledge of this fact failed to safeguard Plaintiff's constitutional rights thereby amounting to willful misconduct, official oppression, conspiracy against rights, retaliation against victim or witness.

29.    The actions of Defendant Tupper in moving forward Defendants Wilson, Pedri and Carroll's criminal complaint # CR-249-10 without evidence of unlawful assembly appearing in the record to support the charge of riot evidenced a practice, policy and custom within Luzerne County to presume all prisoners guilty until proven innocent and evidence a practice of Commonwealth of Pennsylvania bringing charges against accused parties without any evidence to support such charges (rebuttable presumptions).

(*Id.* at ¶'s 28.-29.).

With respect to his conspiracy claim, Plaintiff avers:

33.    The actions of Defendant Carroll, Pedri, Wilson and Tupper in acting in collusion or conspiracy with SCI Dallas defendants in retaliating against the Plaintiff with false fictitious "souped up" charges for having filed lawsuit against District Attorney and SCI Dallas officials amounted to a violation of the First Amendment to the U.S. Constitution, and violations of 18 U.S.C. 241, 18 Pa. CSA § 4951, 18 Pa. CSA § 4953 and willfull (sic) misconduct under 42 USC § 550.

(*Id.* at ¶ 33.).

Regarding his RICO claim, Plaintiff states:

34.    The actions of Defendants and all of them in choosing not to implement a policy for disciplining guards for official misconduct and/or choosing not to prosecute guards while selectively prosecuting blacks for the same incident of 4-29-10 amount to violations of 18 USCA § 1962(c) and (d), 18 USCA § 1964(a)

and (c), 18 USCA § 241, 18 USC § 242, 18 Pa. CSA § 4951, 18 Pa. CSA § 4952 and evidenced a "corrupt organization" who selectively and maliciously enforce law motivated by race, political and financial interest.

(*Id.* at ¶ 34.).

Plaintiff sues each Defendant in their official and individual capacities. (*Id.*, p. 1). As relief, Plaintiff requests a declaratory judgment, injunctive relief as well as compensatory and punitive damages. (*Id.*, pp. 11-12). However, Plaintiff can only seek monetary damages from the state actor Defendants in their individual capacities.[5]

Also, insofar as Plaintiff seeks injunctive relief asking the court to rectify the alleged unconstitutional acts which occurred, in part, at SCI-Dallas, they are now moot.[6]

---

[5]As stated, Plaintiff indicates that he seeks money damages from each named Defendant in both their individual and official capacities. To the extent that he seeks monetary damages from the Defendants, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential). Thus, we will recommend that all of Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.

Plaintiff also cannot seek punitive damages as against Defendants in their official capacities. Plaintiff can only seek punitive damages as against Defendants in their individual or personal capacities. *See Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983).

[6]Since Plaintiff indicates that he was transferred from SCI-Dallas and he is now confined as SCI-Frackville, he lacks standing with respect to his claim for injunctive relief regarding the alleged conditions as SCI-Dallas. *See Womack v. Smith*, 2009 WL 5214966, *7 (M.D. Pa.).

In order to satisfy the standing requirement for jurisdiction under Article III, plaintiffs must demonstrate a "personal stake in the outcome" ... Abstract injury is not enough. The plaintiff must show that he "has sustained or *is immediately in danger of sustaining some direct injury*" as a result of the challenged official conduct and the injury or *threat of injury must be both "real and immediate,"* not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citations omitted) (emphasis added). "[A] given plaintiff may have standing to sue for damages yet lack standing to seek injunctive relief." *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir.1987). Allegations that a plaintiff has suffered from unconstitutional practices may be sufficient for standing to sue for damages,

Plaintiff does not indicate if filed grievances regrading the alleged conduct of the DOC Defendants and if he exhausted his administrative remedies available through the DOC with respect to all of his present claims against the DOC Defendants.[7]

We now screen Plaintiff's pleading as we are obliged to do under the PLRA.

## III. PLRA.

Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 7). The Prison Litigation Reform Act of 1995,[8] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[9] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

---

but "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...." *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). In order to obtain standing, a plaintiff must "establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice.]" *Id.* (citing *Lyons,* 461 U.S. at 105). Plaintiff Keys does not state that it is a possibility he will be transferred back to SCI-Dallas in the future.

Thus, we will recommend that Plaintiff's claim for injunctive relief relating to the conditions at SCI-Dallas be dismissed.


[7]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis,* 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo,* 126 S.Ct. 2378 (2006). In *Porter v. Nussle,* 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002).

[8]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

## IV. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[10] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

---

[10] Plaintiff alleges in his pleading that the individual Defendants are state actors. (Doc. 1). This is sufficient to show that these Defendants are state agents. *See McCarthy v. County of Bucks*, 2008 WL 5187889, * 1, n. 4 (E.D. Pa.).

*supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009). As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") citing *Rode, supra*.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199 (W.D. Pa.).

**V. Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* *Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

# VI. Discussion.

### 1. *Commonwealth and State Agency Defendants*

As Defendants, Plaintiff names, in part, the Commonwealth of Pennsylvania , PSP Wyoming Barracks, and the PA DOC, SCI-Dallas.   The Commonwealth of Pennsylvania, the PSP and the DOC are not proper Defendants in this action.   The Eleventh Amendment bars Plaintiff's claims against the Commonwealth, the PSP and the DOC.   These three Defendants are protected by sovereign immunity under the Eleventh Amendment with respect to Plaintiff's claims. *See Urella v.*

*PA State Troopers Ass'n*, 2008 WL 1944069, *2 (E. D. Pa.); *MCI Telecom. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir. 2001). Also, because the DOC and PSP are agencies of the Commonwealth of Pennsylvania, this Court's jurisdiction over these Defendants is barred based on the Eleventh Amendment.

In *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009), this Court held that:

> The Eleventh Amendment precludes private federal litigation against a state and its agencies. n16 *Hans v. Louisiana*, 134 U.S. 1, 15-16, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194-95 (3d Cir. 2008). This is a jurisdictional bar subject to only two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). It is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). [**41] Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. See 42 PA. CONS. STAT. § 8521(b); *see also Lombardo*, 540 F.3d at 196 n.3; *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

*See also Urella v. PA State Troopers Ass'n*, 2008 WL 1944069, *3.

Therefore, we will recommend that Defendants Commonwealth of Pennsylvania, PSP and DOC be dismissed. *See Beattie v. DOC SCI-Mahanoy*, 2009 WL 533051, *6 (M.D. Pa.)("state agencies are not subject to liability under §1983 actions brought in federal court." PA DOC and PSP are state agencies and not persons.).

*2. Defendants Luzerne County Courthouse, District Attorney's Office and AFSCME*

Plaintiff also names as Defendants the Luzerne County Courthouse, District Attorney's Office and AFSCME, Luzerne County Chapter. Initially, these two county Defendants and AFSCME are not persons under § 1983. *See Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.)("A county prison does not have the legal capacity to be sued in its own name.").

In *Meyers*, the Court stated:

> The Schuylkill County Prison is not a "person" within the meaning of Section 1983. *See, e.g., McLeod v. Still*, No. Civ. 05-4635, 2006 WL 372989, at *4 (D.N.J. Feb. 16, 2006) (Monmouth County Correctional Institutional is not a "person" amenable to suit under § 1983) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir.1973) (state prison medical department not a "person" under § 1983); *Marsden v. Fed. BOP*, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity amenable to suit under § 1983); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a "person" under § 1983); *McCoy v. Chesapeake Corr. Center*, 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a "person" under § 1983); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301) (E.D.N.C.1989) (city jail not a "person" amenable to suit under § 1983)). The action will therefore be dismissed as to the Schuylkill County Prison.

Therefore, we will recommend that Defendants Luzerne County Courthouse, District Attorney's Office and AFSCME be dismissed.

Further, to the extent Plaintiff has named Luzerne County Courthouse, and the District Attorney's Office as Defendants, *i.e.* county agencies, and AFSCME as a Defendant pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978), we find that he fails to state a cognizable municipal liability claim against Luzerne County. *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008). Under *Monell*, "municipalities and other local government units are

among those 'persons' to whom Section 1983 applies." *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9. *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.). As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,*
> 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County
> "can be sued directly under § 1983 ... [when] the action that is alleged
> to be unconstitutional implements or executes a policy statement,
> ordinance, regulation, or decision officially adopted and promulgated
> by [Lehigh County's] officers" or where the constitutional deprivations
> occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98
> S. Ct. 2018.

*Id.*

Based on our above discussion of Plaintiff's allegations, we find that Plaintiff has not stated a cognizable municipal liability claim under *Monell* against Luzerne County with respect to any of his stated constitutional claims. As mentioned, Plaintiff avers that it was the policy of Luzerne County to overlook the crimes of correctional officers and union members at SCI-Dallas due to political and financial interests as well as collective bargaining agreements. The employees at SCI-Dallas are state employees of the PA DOC and are not employees of Luzerne County. Plaintiff also alleges that the conduct of Defendants DJ Tupper and PSP Corporal Wilson by filing criminal charges against him and by binding over the charges to CCP for trial without establishing evidence was an unlawful policy within Luzerne County of depriving accused people of "due process right to be presumed innocent until proven guilty. (Doc. 1, p. 8).

Luzerne County cannot be held liable for the conduct of persons it supervises pursuant to *respondeat superior*. *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9. In fact, as stated, the prison staff at SCI-Dallas are not even employees of Luzerne County. Also, "[Luzerne County] is

subject to liability to the extent [it] maintain[s] an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citation omitted). No such custom or policy is properly alleged by Plaintiff with respect to Luzerne County.

As the *Kokinda* Court stated:

> A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior*. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to "deliberate indifference . . . [to the constitutional rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional" injury." *Id.* at 325 (citations omitted).
>
> To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.ct. 1382, 137 L.Ed.2d 626 (1997)). But, despite Defendants' arguments that Plaintiff has failed to allege any specific policies that authorized the actions officers Brenner and Ohl allegedly took, (Doc. 9, at 10; Doc. 11, at 6-8), there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss. *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999). This would be "unduly harsh" at this early juncture. *Id.*

*Kokinda*, 557 F. Supp. 2d at 590-91.

Plaintiff does not make any allegations as described above against Luzerne County necessary to make it subject to municipality liable in a § 1983 action. We find that Plaintiff has not sufficiently stated a claim under *Monell* against Luzerne County with respect to any of his constitutional claims. Based on *Kokinda, Meyers,* and *Malles,* we find Plaintiff's allegations do not sufficiently state that Luzerne County caused any Defendant's alleged conduct by having customs, policies, practices and procedures, and that this conduct gave rise to the constitutional violations alleged in the Complaint.[11] Therefore, we will recommend that Defendants Luzerne County Courthouse, District Attorneys' Office and AFSCME be dismissed.

Moreover, while Plaintiff attempts to challenge the sufficiency of the evidence against him with respect to the criminal charges filed against him by Defendant PSP Corporal Wilson and the finding by Defendant DJ Tupper that a prima facie case was established regarding all 7 charges stemming from Plaintiff's alleged conduct in trying to incite a riot at SCI-Dallas, he has not yet even had his CCP trial with respect to these charges. In fact, as stated, Plaintiff has a hearing scheduled before the CCP on February 17, 2011, with respect to his petition for writ of habeas corpus he filed with the CCP challenging DJ Tupper's decision to bind over the charges against him.

If Plaintiff does not prevail on his state court habeas petition and he is later convicted of the 7 criminal offenses in the CCP, he will have the opportunity to file appeals, both direct and collateral, in state court. Then, once he exhausts his state court remedies, if he is in fact convicted,

---

[11]Also, as discussed below, the basis of the criminal charges Plaintiff is currently facing in the CCP arose out of the same incident for which Plaintiff accuses the prison staff at SCI-Dallas of assaulting him. If Plaintiff is convicted of the criminal charges filed against him by Defendant Wilson, then his present constitutional claims will be *Heck* barred.

18

he will be able to file a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.[12]

Plaintiff will be able to present his numerous claims that his constitutional rights were violated regarding the filing of the criminal charges against him and his preliminary hearings in his state court appeals if he is convicted, and he will then be able to present these claims, i.e. his conviction was contrary to the Constitution and federal law, in a habeas corpus petition with this Court.[13]

Thus, Plaintiff's present claims challenge the sufficiency of the evidence against him with respect to the criminal charges filed against him by Defendant PSP Corporal Wilson and the finding

---

[12]The habeas statute requires a prisoner to exhaust his claims in state court before seeking relief from federal courts. 28 U.S.C. § 2254(b)(1)(A); see also Landano v. Rafferty, 897 F.2d 661, 668 (3d Cir. 1990). It is well settled in the Third Circuit that the Court has discretion to raise procedural issues, such as exhaustion of state court remedies, in habeas cases, and it may do so sua sponte. See Sweger v. Chesney, 294 F.3d 506, 520-521 (3d Cir. 2002), cert. denied, 538 U.S. 1002 (2003).

[13]Section 2254(d), as amended, states as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

19

by Defendant DJ Tupper that a *prima facie* case was established regarding all 7 charges are premature. Further, as stated, Plaintiff must first challenge any criminal conviction *via* a § 2254 habeas petition.

### 3. Defendant DJ Tupper

Further, Plaintiff avers that the actions of the Magisterial District Judge Tupper regarding the criminal complaint Defendant Wilson filed against him, such as the way Tupper presided over his two preliminary hearings and Tupper's finding of a *prima facie* case on all 7 charges, are unconstitutional. However, Defendant Tupper is entitled to absolute judicial immunity with respect to Plaintiff's claims against him in this § 1983 suit. *See Stankowski v. Farley, supra.; Beattie v. DOC SCI-Mahanoy*, 2009 WL 533051, *5 (M.D. Pa.). In *Beattie*, the Court stated:

> The doctrine of absolute judicial immunity bars civil suits for monetary damages against judicial officers who have jurisdiction over the subject matter before them and they are performing a "judicial" act. *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Immunity applies even if the action was taken in error, done maliciously or was in excess of a judge's authority. *Mireles*, 502 U.S. at 13; *Stump*, 435 U.S. at 356-57. Judicial immunity extends to all judicial officers, including district justices. *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255, 1262 (Pa.Super.Ct.1983).
>
> In determining whether the challenged act is a "judicial act," the court asks two questions: (1) is the act a function normally performed by a judge and (2) did the party aggrieved by the challenged act deal with the judge in his judicial capacity. *Stump*, 435 U.S. at 362.

*Id.*

Thus, we will recommend that Defendant DJ Tupper be dismissed.

### 4. *Defendants DA Carroll and ADA Pedri*

Additionally, the District Attorney's Office Defendants, DA Carroll and ADA Pedri, are entitled to absolute immunity with respect to any claim for monetary damages in a §1983 action if their actions were part of their prosecutorial functions. We find that the District Attorney and her Assistant District Attorney are entitled to absolute immunity from Plaintiff's claims because their above stated alleged conduct in prosecuting Plaintiff with respect to the 7 charges Defendant Wilson filed against him were "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Odd v. Malone*, 538 F. 3d 202, 211, n. 3 (3d Cir. 2008)("Depending of the circumstances of each case, some pre-indictment acts - like obtaining, reviewing, and evaluating evidence in preparation for prosecution ... -may be advocative and entitle a prosecutor to absolute immunity.")(citations omitted); *Beattie v. DOC SCI-Mahanoy*, 2009 WL 533051, *4 (M.D. Pa. 3-3-09). We find that the prosecutors, in moving forward with the charges filed against Plaintiff and in handling Plaintiff's preliminary hearings and in reviewing the evidence against him, were clearly acting in an advocacy function. Moreover, as stated, Plaintiff's CCP records indicate that all 7 charges were bound over to CCP after his preliminary hearings and that he is challenging this finding *via* his pending habeas petition.

Thus, to the extent Plaintiff Keys' case is a civil rights action under § 1983 for alleged violations of his constitutional rights regarding his pending criminal case and charges pending in the CCP, of which he has not yet been convicted, he fails to state any cognizable claim upon which relief can be granted.

21

Therefore, we will recommend that Defendant DA Carroll and Defendant ADA Pedri be dismissed.

### 5. Plaintiff's Claims are Heck Barred

Even if Plaintiff could proceed on a § 1983 action under the facts of this case, and despite the fact he has not yet been convicted, his claims would be barred based on *Heck v. Humphrey*, 512 US 477 (1994). *See Stawarz v. Rojas*, 2007 WL 1653742, *4. If Plaintiff Keys was successful with respect to his present claims challenging his arrest, prosecution and the pre-trial phase of his criminal case, including the lack of evidence against him and his claim that the guards at SCI-Dallas committed "felony assaults" on him, that he was not allowed to present witnesses at his preliminary hearings, and that he has been denied his due process rights, then these claims would necessarily call into question any conviction Plaintiff may eventually receive. As stated, Plaintiff's present claims involve his conduct at SCI-Dallas, which is the basis for the pending criminal charges against him.

As the Court stated in *Stawarz v. Rojas*, 2007 WL 1653742, *4 -*5:

> If Plaintiff were successful in his claims in the complaint that during the course of Plaintiff's criminal proceedings the Defendants failed to communicate with him at all and/or had a conflict of interest, then these claims would necessarily call Plaintiff's conviction into question. *See, e.g., Smith v. Gambrell*, 108 Fed .Appx. 218, 218-19 (5th Cir.2004)"His allegations of ineffective assistance [of trial counsel Gambrell] ... call into question the validity of his conviction, and Smith therefore must satisfy the conditions of *Heck v. Humphrey*, 512 U.S. 477, 484-87 (1994), before he can proceed in a civil rights action."); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.1995) (per curiam) (concluding that Sixth Amendment claim of ineffective assistance of counsel brought under section 1983 is precluded under *Heck*); *Dickerson v. Rogers*, No. C06-5419 FDB, 2006 WL 2714563, *2 (W.D.Wash. Sept. 22, 2006) ("if plaintiffs [sic, should be "plaintiff"] actually suffered due to the ineffectiveness of his attorney's performance during state court proceedings, this § 1983 case would similarly be dismissed pursuant to *Heck v. Humphrey*, 114 S.Ct. 2364 (1994), since the

issue of ineffectiveness of counsel necessarily calls into question the fact or duration of plaintiff's conviction and plaintiff ha[s] not alleged that the underlying conviction has been overturned, expunged, or otherwise invalidated").

The *Heck* bar would apply whether Plaintiff is still a pre-trial detainee or whether he has already been convicted of the charges for which he is currently incarcerated. *Smith v. Holtz,* 87 F.3d 108, 113 (3d Cir.1996)"In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is *outstanding* at the time the civil rights action is instituted and a *potential* conviction on a pending charge that may be entered at some point thereafter. Because of these concerns, we hold that a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983."). [FN2].

> FN2. The only potential question that arises is whether the rule of *Heck* is rendered inapplicable by the fact that in *Heck,* the plaintiff therein sought money damages whereas Plaintiff herein seeks only injunctive relief. The answer is the rule of *Heck* is not rendered inapplicable. The courts have held that regardless of the relief sought in a Section 1983 suit, if success by the plaintiff would necessarily imply the invalidity of a criminal conviction, *Heck* bars the suit. See, *e.g., Allen v. Campbell,* 194 F.3d 1311 (Table), 1999 WL 1000833, at * 1 (6th Cir.1999) "A claim challenging confinement must be dismissed regardless of whether the plaintiff seeks injunctive or monetary relief."); *Hall v. Woodall,* 181 F.3d 101 (Table), 1999 WL 313886, at *2 (6th Cir.1999)" *Heck* applies even though Hall sought injunctive relief."); *Buckley v. Ortega,* 165 F.3d 35 (Table), 1998 WL 808032, at * 1 (9th Cir.1998) "Because a judgment, for monetary relief or otherwise, in favor of Buckley would necessarily imply the invalidity of his guilty plea conviction and sentence, and because he has not shown that his conviction and sentence have been previously invalidated, the district court properly granted summary judgment in favor of Ortega and Rachow.")(emphasis added); *Abella v. Rubino,* 63 F.3d 1063, 1066 (11th Cir.1995)("declaratory or injunctive relief claims ... which challenge the validity of the claimant's conviction or sentence and seek release-are simply not cognizable under § 1983."). Hence, because Plaintiff's claims necessarily call into question the validity of his conviction or potential conviction, his claims must be dismissed under *Heck.*

Since Plaintiff has not been convicted of the 7 charges filed against by Defendant Wilson, and since no conviction in the Luzerne County Court of Common Pleas has as of yet been reversed or overturned, Plaintiff's present challenge to his pending criminal case and his claims regarding who was responsible for the incident at SCI-Dallas are *Heck*-barred.

Also, as stated, Plaintiff alleges that Defendant Zakkarauskas, a Major at SCI-Dallas, possesses, along with Defendants Carroll, Pedri, and Wilson, video evidence from the prison of "white [correctional] officers viciously beating Plaintiff and 5 other black inmates for the same incident [at the prison of 4-29-10] in which their criminal complaint is founded upon." (Doc. 1, p. 5). Plaintiff further alleges that Defendants Zakkarauskas, Carroll, Pedri, Tupper and Wilson "souped up [criminal] charges [against him] and false allegations leaked to newspapers and WNEP [TV] Channel 16 News that Plaintiff incited a riot and them attempted to escape [from prison] ... ." (*Id.*, p. 6). Plaintiff avers that Defendants acted to subject him to public outrage, slander, hatred and defamation. We find that all claims against Defendants Zakkarauskas, Carroll, Pedri, Tupper and Wilson regarding the criminal charges filed against Plaintiff and his pending criminal case are *Heck* barred.

This Court in *Supples v. Burda*, Civil No. 07-1560, M.D. Pa., 10-26-07 Memorandum (J. Caldwell), pp. 6-7, 2007 WL 3165537, stated:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court clarified the interplay between habeas and civil-rights claims. The Court ruled that a section 1983 claim for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by

24

a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394 (footnote omitted).

Heck has been extended to requests for declaratory and injunctive relief. *See Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983 action seeking damages and declaratory relief which challenges a prison disciplinary hearing forfeiting good-time credits). As the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original): "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." As the Third Circuit has summarized the holding of *Heck*: "where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence." *Williams, supra*, 453 F.3d at 177 (Emphasis added).

See also *Walker v. Zenk*, Civil No. 01-1644, M.D. Pa., 2-7-08 Memorandum slip op. pp. 25-28; *Mendoza v. Meisel*, 270 Fed. Appx. 105,107 (3d Cir. 2008)(*Heck* held that "§ 1983 damages actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments that necessarily require the Plaintiff to prove the unlawfulness of his conviction or confinement")(Per Curiam).

Additionally, in *Rose v. Mahoning Tp.*, 2008 WL 918514, *6 (M.D. Pa.), the Court stated:

The United States Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions, whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

> executive order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by a federal
> court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*,
> 512 U.S. 477, 486-487, 114 S.Ct. 2364, 1129 L.Ed.2d 383 (1994).
> The plaintiff pled guilty and that conviction has not been reversed,
> expunged, declared invalid or called into question; therefore, he
> cannot pursue a federal civil rights claim that the arrest was improper.
> The plaintiff's claim involving his right to be free from unwarranted
> arrest will thus be dismissed.

Thus, insofar as Plaintiff is raising § 1983 claims, including false arrest and malicious prosecution as well as violations of his rights under the First Amendment, Fourth Amendment, Sixth Amendment and Fourteenth Amendment with respect to the criminal charges pending against him in the CCP, we find that they are subject to dismissal as against all Defendants, despite the fact that Plaintiff has not yet been convicted, since they are *Heck*-barred.

### 6. *Rooker-Feldman Doctrine*

Furthermore, to the extent Plaintiff seeks this Court to review the evidence against him and the pre-trial stages of his criminal case, including his preliminary hearings, and to decide if there is sufficient evidence against him to proceed to trial in the CCP, this Court is barred by the *Rooker-Feldman* Doctrine from granting Plaintiff any such relief. *See Stawarz v. Rojas*, 2007 WL 1653742, *5. Plaintiff, in part, is really requesting this Court to decide if there was enough evidence presented against at his preliminary hearings and if his criminal case should proceed to trial. As stated, Defendant DJ Tupper bound over all 7 charges against Plaintiff after his preliminary hearing on November 12, 2010. Plaintiff's CCP Criminal Docket Sheet demonstrates this fact. Plaintiff also seems to request this Court to decide the CCP pre-trial motion he filed, namely his habeas petition, and to determine if his criminal case should be dismissed based on his claims that the guards at SCI-

Dallas were assaulting him at the time in question and that he was not inciting a riot at the prison. This Court is not a state appeals court, and such requests of Plaintiff are not properly before this Court. Plaintiff can raise all of his present claims attacking the criminal charges against him in the CCP. The federal Court is barred by the *Rooker-Feldman* Doctrine from considering Plaintiff's present claims.

As explained by the Court in *Stawarz v. Rojas*, 2007 WL 1653742, *5:

> The "fundamental principle of the *Rooker-Feldman* doctrine [is] that a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings." Port *Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dept.,* 973 F.2d 169, 179 (3d Cir.1992). The *Rooker-Feldman* doctrine is addressed to the Federal Court's subject matter jurisdiction. *Gentner v. Shulman,* 55 F.3d 87, 89 (2 Cir.1995) "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature."). In other words, a federal district court has no subject matter jurisdiction if it is called upon to essentially act as an appellate tribunal of a state court.

Thus, Plaintiff's present action should be dismissed since it is precluded by the *Rooker-Feldman* Doctrine. *Id.*

7. *Younger v. Harris Abstention Doctrine*

Additionally, Plaintiff's instant request, seemingly for this Court to enjoin his pending criminal proceedings in the CCP while it reviews the evidence against him and the merits of his constitutional claims, is precluded by the *Younger v. Harris,* 437 U.S. 37 (1971), abstention doctrine. In *Leer Elec., Inc. v. Com. of Pa.,* 2008 WL 5378284, *4 (M.D. Pa.), the Court stated:

> In *Younger v. Harris,* the United States Supreme Court established an abstention doctrine by holding that federal courts may not enjoin pending state criminal proceedings. 437 U.S. 37 (1971). In the line of cases that followed *Younger,* the Supreme Court made it clear that this doctrine of abstention is not specific to criminal matters, but also applies to state civil

27

court and administrative proceedings. *See Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (holding that federal courts may not enjoin state civil proceedings between private parties); *Ohio Civil Rights Commn. v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (holding that federal courts may not enjoin state administrative proceedings when important state interests are involved); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (first applying *Younger* to state administrative proceedings). "The *Younger* doctrine ... reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (citing *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)). *Younger* abstention is appropriate when three requirements are satisfied. *See Middlesex,* 457 U.S. at 432 (collecting and summarizing authorities to establish a three part test). First, the federal plaintiff must be a party in an ongoing state proceeding of a judicial nature subject to interference by continued federal court action. Second, the state proceeding must implicate important state interests. And third, the federal plaintiff must have an adequate opportunity to raise constitutional challenges in the state court proceedings.

We find that the pending state court criminal proceedings against Plaintiff in the CCP satisfy the three requirements of *Younger* abstention. Plaintiff is clearly a party in an ongoing state court action and this is a proceeding of a judicial nature subject to interference if the present case was allowed to proceed. The state court criminal proceeding clearly implicates important state interests since the state has a legitimate governmental function in a policy against riots in prisons located within the County. Finally, Plaintiff will have an adequate opportunity to raise his constitutional claims in his state court proceeding, pre-trial, and at his trial and in any direct and collateral appeals he may file if he is convicted. In fact, as stated, Plaintiff has a challenge to his preliminary hearings and the decision of Defendant DJ Tupper currently pending with the CCP *via* his habeas petition. (*See* attached CCP Criminal Docket sheet).

Therefore, we find that Plaintiff's case satisfies the three *Younger* abstention requirements and that the *Younger* abstention doctrine bars this Court from granting the injunctive relief Plaintiff seeks in both in his Complaint and in his Injunction Motion. (Doc. 2).

8. *Anti-Injunction Act*

There is also another reason why this Court is barred from enjoining the Plaintiff's pending criminal proceedings in the CCP and granting his Doc. 2 Injunction Motion, namely, the Anti-Injunction Act.

Plaintiff's present request for this Court to issue an injunction and intervene into his pending criminal case which has not yet proceeded to trial, and his request for this Court to find Defendants violated his constitutional rights in his CCP criminal case and to grant his motion for a special investigator and to determine the sufficiency of the evidence against him (*i.e.* to review the state court determination that probable cause existed with respect to the 7 charges and the decision that his case should proceed to trial), is improper under the Anti-Injunction Act.[14]

---

[14] We note that, to the extent that Plaintiff also claims the conduct of Magisterial District Judge Tupper and Defendant Corporal Wilson was in violation of state law, such claims are barred by the Eleventh Amendment. *See Leer Elec., Inc. v. Com. of Pa.*, 2008 WL 5378284, *3 (M.D. Pa.).

In *Leer Elec.*, the Court stated:

Reviewing the complaint in the current case, the Court finds that the Eleventh Amendment denies the Court jurisdiction over the plaintiff's claims brought under Pennsylvania law. As stated by the Supreme Court, "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law ." *Pennhurst [State School & Hosp. V. Halderman]*, 465 U.S. [89] at 106[1984]. As such, if the Court were to instruct the Pennsylvania officials on how to conform their conduct to Pennsylvania law, it would engage in a practice that "conflicts directly with the principles of federalism that underlie

In *Leer Elec., Inc. v. Com. of Pa.*, 2008 WL 5378284, *10, the Court stated, "the so-called "Anti-Injunction Act" states that "[t]he writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Rev. Stat. of 1874, ch. 12, § 720, 18 Stat. 134."

While the Court in *Leer Elec.* found that its case in which Plaintiffs brought their claims under § 1983 fit an exception to the Anti-Injunction Act and found that it was not barred from issuing an injunction to stay the state administrative proceedings, as discussed above, insofar as Plaintiff Keys is construed as raising claims under § 1983, we find that he has not stated a cognizable § 1983 claim.

### 9. *Injunction Motion*

Finally, even if Plaintiff Keys' case fit an exception to the Anti-Injunction Act and the Court was not precluded from issuing an injunction that would essentially stay his state court criminal case, and the evidence against him was reviewed by this Court, we find that Plaintiff has not made any showing, based upon our above discussion, that he will ultimately succeed on the merits of his case and that the extraordinary remedy for an emergency preliminary injunction is warranted. The elements required for the Court to grant a preliminary injunction are outlined by Federal Rule of Civil Procedure 65, as Plaintiff recognizes, which allows for an equitable remedy of preliminary injunction. In order to obtain a preliminary injunction, "the moving party must generally show: (1)

---

the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106.

a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo." *A.L.K Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761, 763 (3d Cir.1971). The Court, when considering whether to grant a preliminary injunction, must also take into account "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 920 (3d Cir.1974). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc., v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir.2005) (citing *Nutrasweet Co. v. Vit-Mar Enterprises*, 176 F.3d 151, 153 (3d Cir.1999). In short, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (3d Cir.1997).

Pursuant to the above discussion, we find that Plaintiff Keys has not met the required elements for the issuance of a preliminary injunction since we find that he will not likely succeed on the merits of his claims.

*10. RICO claims*

As stated, Plaintiff raises RICO claims against Defendants, and he avers that the actions of Defendants by choosing not to implement a policy for disciplining prison guards for misconduct, i.e. assaults on inmates, and/or choosing not prosecute guards while selectively prosecuting black inmates for the same conduct, violated 18 U.S.C. §1962(c) and (d), as well as §1964(a) and (c).

31

(Doc. 1, p. 9). Plaintiff alleges that Defendants had a "conspiracy code" to prosecute any inmate who complained about prison staff, who were union members, in order to increase prosecutions which would equal more finances and more jobs for their fellow union members. (*Id.*, pp. 3-4). Plaintiff states that the secret profits Defendants obtained from such prosecutions of inmates, which they concealed from the public, amounted to RICO predicate acts. (*Id.*).

To support his claims for RICO liability, Plaintiff must identify and allege racketeering acts which Defendants committed. The Court in *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d 490, 506-07 (E.D. Pa. 2007), stated:

> In addition to properly alleging the existence of an enterprise, a RICO plaintiff must allege that each defendant conducted or participated in the conduct of the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir.1993). In order to participate in the conduct of an enterprise's affairs, one need not hold a formal or managerial position within an enterprise. RICO liability is not limited to upper management but extends to "lower-rung participants in the enterprise who are under the direction of upper management," as long as they "further the illegal aims of the enterprise by carrying out the directives of those in control." *United States v. Urban*, 404 F.3d 754, 769-70 (3d Cir.2005) (quoting *Reves* at 184, 113 S.Ct. 1163). The necessary requirement is that there be a "nexus between the person and the conduct in the affairs of an enterprise." *Univ. of Md.* at 1539 (holding that allegations that a defendant provided valuable, indispensable accounting services to the enterprise did not adequately plead participation in the conduct of the enterprise).

Title 18 U.S.C. § 1961(1) provides a list of criminal acts which constitute "racketeering activity" under the statute. This list is exhaustive. *See Annulli v. Panikkar*, 200 F.3d 189, 200 (3d. Cir. 1999) (holding that intentional interference with a contract under state law did not constitute racketeering under 18 U.S.C. § 1961(1) when plaintiff's contract with defendant to manage tree

garden was terminated).  To allege the criminal acts that constitute racketeering activity, a plaintiff must sufficiently allege the required elements of each criminal act.  Thus, to satisfy a RICO claim, "a plaintiff must establish all elements of the predicate act crimes in addition to the elements enumerated in RICO." *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785 (M.D. Pa.).  Plaintiff Keys fails to properly allege that Defendants committed any criminal acts enumerated under RICO. Based on our discussion above, we find that Plaintiff's Complaint fails to contain sufficient allegations to show the required nexus between each Defendant and the conduct of the enterprise. *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d at 507.

Moreover, the Court in *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d at 509, stated:

> In addition to properly alleging the existence of two or more predicate acts, a plaintiff must also show that the racketeering acts are related and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-40, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *c.f. Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593 (3d Cir.1990) (affirming dismissal of complaint for failure to adequately allege relatedness and continuity); *overruled in non-pertinent part, Tabas v. Tabas*, 47 F.3d 1280, 1293 n. 17 (3d Cir.1995). Predicate acts are considered related if they have "the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." *H.J.* at 240, 109 S.Ct. 2893. Predicate acts will satisfy the continuity requirement where they evince "long-term criminal conduct" or where "it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Tabas* at 1293.

Additionally, as the Court in *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d at 509, stated:

> To properly state a RICO claim under 18 U.S.C. § 1962(c), the plaintiff must not only properly allege an enterprise in which the defendant participated, and a "pattern of racketeering activity." The plaintiff must also plead a "nexus" between the two: "all predicate acts in a pattern must somehow be

33

related to the enterprise." *Banks v. Wolk,* 918 F.2d 418, 424 (3d Cir.1990). This requirement is satisfied when " '[o]ne is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affirm of the enterprise; or the predicate offences are related to the activities of that enterprise.' " *Id.* (citing *United States v. Provenzano,* 688 F.2d 194, 200 (3d Cir.1982)); *see also United States v. Irizarry,* 341 F.3d 273, 304 (3d Cir.2003).

Even assuming *arguendo,* that Plaintiff has properly pled an enterprise and that he has pled the individual Defendants were participants in this enterprise, we do not find that he has properly alleged a pattern of racketeering regarding Defendants. Also, we find that Plaintiff has failed to allege particular facts that Defendants knew that they were participating in a fraud scheme.

As discussed above, we find that Plaintiff fails to sufficiently allege the required elements of any predicate offense. As such, we find that Plaintiff fails to sufficiently allege his RICO claims and, we will recommend that these claims be dismissed.

*11. Supervisory Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh, Deputy Superintendent Mooney*

As stated, Plaintiff names as Defendants five supervisory county and state officials, namely, Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney. We find that Plaintiff does not allege that Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney directed the other Defendants to violate his rights. Nor do we find that Plaintiff has sufficiently stated the personal involvement of Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney with respect to the violation of any of his constitutional rights.

We also find that Plaintiff has named Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney only based on *respondeat superior,* which is not an acceptable basis to hold these supervisory Defendants liable in a civil rights action. *See Rhines v. Bledose,* 2010 WL 2911628, *2 (3d Cir.). As discussed above, we do not find that Plaintiff has specifically stated the personal involvement of Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney with respect to any of his constitutional claims.

In *George v. PA DOC,* 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

See also *Santiago v Warminister Tp.,* 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

In his Complaint, Plaintiff is clearly attempting to assert his claims against Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent

Walsh and Deputy Superintendent Mooney based only on *respondeat superior*. Further, Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney are not sufficiently stated to have been personally involved with any cognizable violation of Plaintiff's constitutional rights. Nor are Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney alleged to have directed the other Defendants to violate his rights. *Id.* These supervisory Defendants are not alleged to have been involved in charging Plaintiff with criminal offenses and in prosecuting Plaintiff in the CCP. Nor do these Defendants have authority to criminally charge Plaintiff and to prosecute him.

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal*, stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill*, 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include

factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

In order to state an actionable claim under §1983, as indicated above, a plaintiff must allege that a person has deprived him of a constitutional right, and that the person who caused the deprivation acted under color of state law. *See Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 498-499 (M.D. Pa. 2005); *Ayers,* 2009 WL 801867, *5; *Santiago, supra.* Plaintiff has not alleged a causal connection between the direction by Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney and the violation fo his constitutional rights by the other Defendants. *See Santiago, supra.*

Therefore, we will recommend that supervisory Defendants Luzerne County Commissioner Jane Doe, Governor Rendell, DOC Secretary Beard, Superintendent Walsh and Deputy Superintendent Mooney be dismissed entirely from this case. *See Santiago, supra.*

*12. First Amendment Retaliation Claim*

Plaintiff claims that his First Amendment rights were violated when Defendants Carroll, Pedri, Tupper and Wilson filed criminal charges against him as retaliation for his June 2010 lawsuit he filed in the CCP against Carroll, Zakkarauskas, Beard, Walsh, Mooney, as well as other prison

officials, alleging corruption and ignoring abusive treatment of the RHU inmates at SCI-Dallas. As discussed, Defendant Tupper is the Magistrate District Judge who was the issuing authority and who was the judicial officer who presided over Plaintiff's preliminary hearings regarding the criminal charges filed against him by Defendant Wilson. Defendant Tupper bound over all charges against Plaintiff to CCP for trial. Plaintiff's attached CCP Criminal Docket Sheet demonstrates these facts. As discussed above, since Defendant Tupper is entitled to absolute judicial immunity with respect to Plaintiff's claims against him, we find that Tupper is also immune from Plaintiff's First Amendment retaliation claim. *See Beattie*, 2009 WL 533051, *5.

We have also found that Defendants DA Carroll and ADA Pedri are entitled to prosecutorial immunity with respect to Plaintiff's claims against them. *See Beattie*, 2009 WL 533051, *4. "This immunity applies when a prosecutor prepares to initiate a judicial proceeding, and it continues throughout the execution of the prosecutor's basic trial advocacy duties." *Id.*, citations omitted. Thus, we find Defendants DA Carroll and ADA Pedri are immune from Plaintiff's First Amendment retaliation claim. *Id.*

Further, since Defendant PSP Corporal Wilson is not alleged by Plaintiff to have been one of the party Defendants Plaintiff named in his June 2010 civil action filed in the CCP alleging abuses against inmates at SCI-Dallas, we find that Plaintiff fails to state a First Amendment retaliation claim against Wilson.

In *Mincy v. Chmielewski*, 2007 WL 707344, *5-*6 (M.D. Pa.), the Court stated:

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir.2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by

government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (quoting *Allah,* 229 F.3d at 225).

"As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser,* 241 F.3d at 333; *see also, Jerry v. Williamson,* 2006 WL 3741840, 1 (3d Cir.2006). While inmates "do not forfeit all constitutional protections by reason of their conviction and confinement including those under the First Amendment ..., lawful incarceration brings about withdrawal or limitation of privileges and rights for various reasons, including institutional security." *Cooper v. Tard,* 855 F.2d 125, 128 (3d Cir.1988); *see also, Pell v. Procunier,* 417 U.S. 817, 822 (1974) (stating that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

Plaintiff Keys alleges that he has a First Amendment right to file a lawsuit. We agree. *See Mincy v. Chmielewski,* 2007 WL 707344,*6("The filing of a grievance clearly falls within the ambit of the First Amendment.")(citation omitted). However, we do not find that Plaintiff has sufficiently stated that there was a causal link between his June 2010 lawsuit and any adverse action taken against him by Defendant Wilson since Wilson was not involved in the lawsuit. As mentioned, the personal involvement of Defendant Wilson is clearly not stated by Plaintiff with respect to his First Amendment retaliation claim.

Thus, we find that Plaintiff Keys has not met the second element with respect to his First Amendment retaliation claim against Defendant Wilson.

Therefore, we will recommend that Plaintiff's First Amendment retaliation claim against Defendants Defendants Carroll, Pedri, Tupper and Wilson be dismissed.[15]

---

[15]We also note, as discussed above, that since Plaintiff Keys clearly has pending criminal charges against in the CCP, as reflected by the attached Criminal Docket Sheet, all of his claims under §1983, including his First Amendment retaliation claim, are *Heck* barred. *See Beattie,* 2009 WL 533051, *9, n. 11.

### 13. Plaintiff's Claims for Money Damages under Pennsylvania Constitution

Plaintiff cannot seek money damages from any Defendants under the Pennsylvania Constitution. Thus, to the extent that Plaintiff seeks money damages from all Defendants under the Pennsylvania Constitution, it well-settled that he has no private right of action under the Pennsylvania Constitution for money damages. Therefore, insofar as Plaintiff is attempting to raise claims under the Pennsylvania Constitution for damages, they are subject to dismissal as against all Defendants. *See Bowers v. City of Phila.*, 2008 WL 5210256, *8 (E. D. Pa.); Thus, claims for damages that Plaintiff is making under the Pennsylvania Constitution against all Defendants should be dismissed as a matter of law. *See Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327 and note 13 (M.D. Pa.)("Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which provides a private right of action for a federal constitutional violation.")(citations omitted); *Brandt v. Borough of Palmyra*, Civil No. 08-0677, M.D. Pa.; *Maynard v. ENT Surgical Assoc.*, Civil No. 09-1993, M.D. Pa. (1-26-10 Memorandum).

### 14. Plaintiff's Fourteenth Amendment Equal Protection Claim

We do not find that Plaintiff has stated a cognizable Fourteenth Amendment equal protection claim. Plaintiff alleges as follows:

> 18.    Defendants Walsh, Mooney, Zakkarauskas, Carroll, Pedri and Wilson evidenced a deliberate indifference in overlooking the crimes of its fellow white union members/officers under a code of silence while aiding and abetting in the prosecution of Plaintiff and those similarly situated who happen to be black contributed to Plaintiffs injury and evidenced a practice, policy or custom, as well as reckless or callous indifference of the Plaintiff's rights not to be singled out for disparaging treatment and selective/malicious enforcement of law.

(Doc. 1, p. 6, ¶ 18.).

In *Tapp v. Proto*, 2010 WL 1946919, *20 (E.D. Pa.), the Court stated:

> All citizens, whether prisoner or pretrial detainee, are protected from invidious discrimination on the basis of race by the Equal Protection Clause of the Fourteenth Amendment. *See McDonnell,* 418 U.S. at 556. To state an equal protection claim, a plaintiff must show that the defendants' actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 equal protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial evidence. *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an

intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd.* 972 F.2d 1330 (3d Cir. 1992).

Plaintiff has alleged facts from which it can be concluded that he is a member of a protected class, *i.e.* his race. However, Plaintiff has not alleged that any named Defendant engaged in intentional or purposeful discrimination. Plaintiff does not allege that he was treated differently by Defendants than similarly situated persons, *i.e.* inmates in the RHU at SCI-Dallas, on the basis of his race. Plaintiff fails to allege that others similarly situated, but who were not within the protected class, *i.e.* non-black inmates in the RHU at SCI-Dallas, were not subjected to the abuse by prison staff. In fact, Plaintiff states that any inmate who spoke about the alleged abuses at SCI-Dallas and complained about them were subject to the filing of false charges against them and disparaging treatment. Thus, there is no cognizable equal protection claim stated by Plaintiff. *See Mendoza v. Meisel*, 270 Fed.Appx. 105, 107-08 (3d Cir. 2008)(the Court stated that Plaintiff must allege "that he was treated differently from other people who are similarly situated, which is necessary to state an equal protection claim.")(citation omitted).

Therefore, we shall recommend that Plaintiff's Fourteenth Amendment equal protection claim be dismissed as against all Defendants.

15. *§1985 conspiracy claim*

As quoted above, Plaintiff alleges that Defendants Carroll, Pedri, Wilson and Tupper acted in concert with other SCI-Dallas Defendants in retaliating against him by filing false criminal charges against him due to his June 2010 lawsuit he filed in the CCP. (Doc., 1, p. 9). Plaintiff also alleges that Defendant DJ Tupper conspired with Defendant Wilson to presume he was guilty until proven innocent and that Tupper bound over the criminal charges against him without requiring the prosecution to establish sufficient evidence against him on the riot and related charges. (*Id*., p. 5). Plaintiff appears to base his conspiracy claims under §1985.

In *Roach v. Marrow*, 2009 WL 3103781, *5 (M.D. Pa. 9-24-09), the Court stated:

> The requirements for establishing a cause of action under 42 U.S.C.
> § 1985(3) are set forth in a line of Supreme Court cases beginning with the
> decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d
> 338 (1971). There, the Supreme Court clarified that the reach of section 1985(3)
> is limited to private conspiracies predicated on "racial, or perhaps otherwise
> class based, invidiously discriminatory animus." *Id*. at 102, 91 S.Ct. at 1798.
> The Court strictly construed the requirement of class-based invidious
> animus in *United Brotherhood of Carpenters and Joiners of America, Local
> 610 v. Scott,* 436 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding
> that commercial and economic animus could not form the basis for a section
> 1985(3) claim.

> *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997). Consistent with these
> decisions, a plaintiff must allege the following elements in order to state
> a claim pursuant to 42 U.S.C. § 1985(3):

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory
> animus designed to deprive, directly or indirectly, any person or class of persons
> to the equal protection of the laws; (3) an act in furtherance of the conspiracy;

and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Id.*

Thus, "it is not enough that a Plaintiff falls within a class entitled to sue under §1985(3). Instead, the complaint must allege that Defendants have engaged in invidious discrimination against the protected class and that the invidious discrimination has caused the Plaintiff injury." *Roach v. Marrow*, 2009 WL 3103781, *6 citing *Majewski v. Luzerne County*, 2007 WL 1074769 (M.D. Pa. 4-9-07); *Goodson v. Maggi*, 2010 WL 1006901, *6("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim.")(citation omitted).

Plaintiff Keys states that he falls within a class entitled to protection afforded by §1985(3). However, Plaintiff does not state that the alleged conspiracy "was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006). Rather, Plaintiff avers that the conspiracy was motivated by his lawsuit he filed against DA Carroll and SCI-Dallas officials regarding alleged abuses at the prison which were being ignored. Plaintiff has not alleged any facts that race caused Defendants to enter into an agreement to deprive him of his constitutional rights by fabricating criminal charges against him and by initiating criminal proceedings against him in the CCP. Plaintiff alleges that Defendants commenced the criminal proceedings against him due to his civil lawsuit he filed against some of them in the CCP regarding their failure to rectify abuses at SCI-Dallas.

44

Thus, we will recommend that Plaintiff's claim under §1985(3) be dismissed.[16] *See Goodson v. Maggi*, 2010 WL 1006901, *6.

16. *Section 1983 Conspiracy claim.*

Moreover, we do not find that Plaintiff has stated an actionable §1983 conspiracy claim against any Defendant. In *Marchese v. Umstead*, 110 F. Supp.2d 361, 371 (E.D. Pa. 2000), the Court held, "central to any conspiracy claim is specific factual allegations that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." We find that Plaintiff fails to make any specific factual allegations against any Defendant with respect to his broad conspiracy claims. Instead, Plaintiff merely makes the above stated legal conclusions.

In order to set forth a § 1983 cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir.1992); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch*, 914 F.2d 428, 432 n. 8 (3d Cir.1990). *See also, Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir.1988).

The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.*, 972 F.2d at 1377. A plaintiff must therefore allege with particularity and present

---

[16]Also, as discussed above, we do not find that Plaintiff has stated a cognizable claim for a violation of any of his constitutional rights. Thus, his § 1985(3) conspiracy claim also fails for this reason.

material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *See id.; Rose,* 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir.1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation.

In the present case, as detailed above, Plaintiff fails to allege any facts showing a meeting of the minds between any Defendants. Thus, we will recommend that insofar as Plaintiff is deemed as raising a §1983 civil conspiracy claim against all Defendants, it be dismissed.

*17. Sections 1986 and 1981 Claims*

Plaintiff's claims under §1986 should be dismissed since "a §1986 claim cannot exist without a viable §1985 claim." *Goodson v. Maggi,* 2010 WL 1006901, *7. As discussed above, we find that Plaintiff's conspiracy claim under §1985(3) should be dismissed. Thus, we will recommend that Plaintiff 's claims under §1986 be dismissed.

We also find that Plaintiff fails to state a claim under §1981. Section 1981 "protects the equal right of citizens to make and enforce contracts without regard to race." *Whaumbush v. City of Phila.,* 2010 WL 4054334, *10 (E.D. Pa. 10-15-10). The elements of a §1981 claim are: "1) the Plaintiff is a member of a racial minority; 2) an intent to discriminate on the basis of race by the Defendants; and 3) discrimination concerning an activity enumerated in the statute, which includes the right to make and enforce contracts." *Id.* (citation omitted).

Initially, since we have found that Plaintiff has failed to state a municipal liability against Defendant Luzerne County under *Monell* and against the individual Defendants in their official capacities, these Defendants cannot be held liable under §1981. *See Whaumbush v. City of Phila.,* 2010 WL 4054334, *10("Plaintiffs' failure to allege an official custom or policy under *Monell* precludes them from imposing liability upon the City or those Defendants sued in their official capacities.").

However, "§1981 created an implied cause of action against private actors because no other federal statute provided a remedy against them." *Id.*(citations omitted). Thus, Plaintiff can assert a claim under §1981 against Defendants in their individual capacities.

Based on our above in depth discussion of Plaintiff's allegations, we find that Plaintiff's claim under §1981 fails since he has not identified "an impaired contractual relationship under which [he] has rights." Plaintiff does not allege that he had rights in any contract and that Defendants impaired his rights under a contract or blocked the creation of a contract through racial discrimination. Thus, we will recommend that Plaintiff's claim under §1981 be dismissed. *Whaumbush v. City of Phila.,* 2010 WL 4054334, *10.

*18. State Law Claims*

Finally, since we find that Plaintiff has not stated any cognizable federal claim against Defendants, we will recommend that the Court decline to exercise pendent jurisdiction over his state law claims. *See Verdecchia v. Prozan,* 274 F.Supp.2d 712, 728 (W.D. Pa. 2003).

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that all of Plaintiff's constitutional claims under §1983 be dismissed as against all Defendants.[17] It is recommended that Plaintiff's claims under §1981 and §1986 be dismissed. Additionally, it is recommended that Plaintiff's RICO claims be dismissed and that all of his conspiracy claims under both §1983 and §1985(3) be dismissed. It is further recommended that Plaintiff's claims under the Pennsylvania Constitution for money damages be dismissed. Thus, it is recommended that all Defendants be dismissed entirely from this action.

Moreover, it is recommended that Plaintiff's claims for injunctive relief and his Injunction Motion (Doc. 2) be dismissed. It is recommended that the Court decline to exercise pendent jurisdiction over Plaintiff's state law claims.

---

[17]Notwithstanding Plaintiff Keys's *pro se* status and our initial finding that all of his constitutional claims should be dismissed as against all Defendants, we do not recommend that he be permitted to amend his Complaint regarding any of his claims, since we find that the Plaintiff's detailed allegations fail to state any other constitutional violation. Thus, we find futility of any amendment Plaintiff's claims we recommend be dismissed, and we shall not recommend Plaintiff be granted leave to amend his pleading with respect to these claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

It is recommended that Plaintiff's *in forma pauperis* Motion (Doc. 7) be granted solely for the purpose of filing this action.

Finally, it is recommended that this case be closed.[18]

THOMAS M. BLEWITT
**United States Magistrate Judge**

Dated: January 17 2011

---

[18]If the Court dismisses Plaintiff Keys' entire case upon screening it under the PLRA, it may constitute Plaintiff's third strike under 28 U.S.C. §1915(g). *See* cases Nos. 07-338 and 07-1034.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARRINGTON KEYS,                    :        CIVIL ACTION NO. **3:CV-10-2487**
                                    :
          Plaintiff                 :        (Judge Nealon)
                                    :
            v.                      :        (Magistrate Judge Blewitt)
                                    :
COMMONWEALTH OF PENNSYLVANIA, :
et al.,                             :
                                    :
          Defendants                :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 19, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: January 19, 2011



# COURT OF COMMON PLEAS OF LUZERNE COUNTY

## DOCKET

**Docket Number: CP-40-CR-0003548-2010**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Carrington Keys (Ef-4010)

## CASE INFORMATION

Cross Court Docket Nos: CR-0000249-10

Judge Assigned:

OTN: S0657576

Initial Issuing Authority: James Tupper

Arresting Agency: PSP - Wyoming

Case Local Number Type(s)

Date Filed: 11/17/2010     Initiation Date: 07/06/2010

Lower Court Docket No: CR-0000249-10

Final Issuing Authority: James Tupper

Arresting Officer: Affiant

Case Local Number(s)

## STATUS INFORMATION

Case Status: Active

| Status Date | Processing Status | Complaint Date: | 07/06/2010 |
|---|---|---|---|
| 11/17/2010 | Awaiting Formal Arraignment | | |
| 11/17/2010 | Awaiting Filing of Information | | |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 01/14/2011 | 9:30 am | | | Scheduled |

## CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still in Custody |
|---|---|---|---|---|
| 09/20/2010 | DOC Confined | SCI Frackville | | Yes |
| 11/12/2010 | MDJ Confinement | SCI Frackville | Bail Not Posted | Yes |

## DEFENDANT INFORMATION

Date Of Birth: 10/05/1980     City/State/Zip: Frackville, PA 17931-2699

Alias Name

Keys, Carrington Alan

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | Keys (Ef-4010), Carrington |

AOPC 2220 - Rev 01/06/2011

Printed: 01/06/2011

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.



**Docket Number: CP-40-CR-0003548-2010**

# CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania

v.

Carrington Keys (Ef-4010)

## BAIL INFORMATION

**Keys (Ef-4010), Carrington**

Nebbia Status: **None**

| Bail Action | Date | Bail Type | Percentage | Amount | Bail Posting Status | Posting Date |
|---|---|---|---|---|---|---|
| Set | 09/16/2010 | Monetary | | $50,000.00 | | |
| Decrease Bail Amount | 11/12/2010 | Monetary | | $10,000.00 | | |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Date | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F3 | 18 § 2703.1 | Aggravated Harassment By Prisoner | 04/29/2010 | S0657576 |
| 2 | 2 | F3 | 18 § 2703.1 | Aggravated Harassment By Prisoner | 04/29/2010 | S0657576 |
| 3 | 3 | F3 | 18 § 2703.1 | Aggravated Harassment By Prisoner | 04/29/2010 | S0657576 |
| 4 | 4 | F3 | 18 § 2703.1 | Aggravated Harassment By Prisoner | 04/29/2010 | S0657576 |
| 5 | 5 | F3 | 18 § 2703.1 | Aggravated Harassment By Prisoner | 04/29/2010 | S0657576 |
| 6 | 6 | F3 | 18 § 2703.1 | Aggravated Harassment By Prisoner | 04/29/2010 | S0657576 |
| 7 | 7 | F3 | 18 § 5501 §§2 | Riot-Intent To Prev/Coerce Off'l Act | 04/29/2010 | S0657576 |

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | Credit For Time Served | |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date | |
| Sentence Conditions | | | |
| Linked Offense - Sentence | Link Type | Linked Docket Number | |

**Lower Court Proceeding (generic)**

Lower Court Disposition

11/12/2010 — Not Final

| | | | |
|---|---|---|---|
| 1 / Aggravated Harassment By Prisoner | Held for Court (Lower Court) | F3 | 18§2703.1 |
| 2 / Aggravated Harassment By Prisoner | Held for Court (Lower Court) | F3 | 18§2703.1 |
| 3 / Aggravated Harassment By Prisoner | Held for Court (Lower Court) | F3 | 18§2703.1 |
| 4 / Aggravated Harassment By Prisoner | Held for Court (Lower Court) | F3 | 18§2703.1 |
| 5 / Aggravated Harassment By Prisoner | Held for Court (Lower Court) | F3 | 18§2703.1 |
| 6 / Aggravated Harassment By Prisoner | Held for Court (Lower Court) | F3 | 18§2703.1 |
| 7 / Riot-Intent To Prev/Coerce Off'l Act | Held for Court (Lower Court) | F3 | 18§5501§§2 |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.



**Docket Number: CP-40-CR-0003548-2010**

# CRIMINAL DOCKET

### Court Case



Commonwealth of Pennsylvania

v.

Carrington Keys (Ef-4010)

## COMMONWEALTH INFORMATION

| | |
|---|---|
| <u>Name:</u> | Luzerne County District Attorney's Office |
| | Prosecutor |
| <u>Supreme Court No:</u> | |
| <u>Phone Number(s):</u> | |
| | (570) 825-1674    (Phone) |
| <u>Address:</u> | |

Luzerne County Courthouse

200 North River Street

Wilkes-Barre PA  18711

## ATTORNEY INFORMATION

<u>Name:</u>

<u>Supreme Court No:</u>

<u>Rep. Status:</u>

<u>Phone Number(s):</u>

## ENTRIES

| <u>Sequence Number</u> | <u>CP Filed Date</u> | <u>Document Date</u> |
|---|---|---|
| 1 | 11/17/2010 | |

Original Papers Received from Lower Court

Court of Common Pleas - Luzerne County

| 1 | 12/15/2010 | |
|---|---|---|

Motion to Provide Funds for Def to Hire Investigator & Ballistic Expert filed-sent Motion Amesbury,J

Keys (Ef-4010), Carrington

| 1 | 12/16/2010 | |
|---|---|---|

Notice of Interlocutory Appeal filed by Def-sent to Motions Judge Amesbury

Keys (Ef-4010), Carrington

| 2 | 12/16/2010 | |
|---|---|---|

Motion to Dismiss by Writ of Habeas Corpus filed by Def-sent to Motions Judge Amesbury

Keys (Ef-4010), Carrington

| 1 | 01/05/2011 | |
|---|---|---|

Rule filed. Habeas Corpus hearing on 2-17-11

Wetzel, Lewis W.

| 2 | 01/05/2011 | |
|---|---|---|

Order of Court filed. Motion for Investigator-DENIED

Wetzel, Lewis W.

AOPC 2220 - Rev 01/06/2011

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LUZERNE COUNTY

## DOCKET



Docket Number: CP-40-CR-0003548-2010

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania
v.
Carrington  Keys (Ef-4010)

Page 4 of 4

AOPC 2220 - Rev 01/06/2011

Printed: 01/06/2011

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.